**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|   |   |
|---|---|
| **JAYHAWK CAPITAL MANAGEMENT, LLC, and KENT MCCARTHY,** ) ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08-2202-JWL |
| ) | |
| **PRIMARIUS CAPITAL LLC and PATRICK LIN,** ) ) ) | |
| Defendants. ) ) | |

**MEMORANDUM AND ORDER**

Plaintiffs Jayhawk Capital Management, LLC, and Kent McCarthy filed a complaint against Primarius Capital LLC and Patrick Lin, alleging defamation and tortious interference with contract and with potential business relationships. The case is now before the court on Defendants' Motion to Dismiss (Doc. 5) and Defendants' Objections to Evidence Submitted by Plaintiffs, which this court previously construed as a Motion to Strike (Doc. 14). For the reasons stated below, the motion to dismiss is granted and the motion to strike is denied as moot.

**BACKGROUND**

McCarthy, the president and principal owner of Jayhawk Capital Management, and Lin, the managing member of Primarius Capital, first met and began a business

relationship in 2002. According to Plaintiffs' complaint (Doc. 1), "Jayhawk's Investment Fund invested approximately $20 million in Primarius' Investment Funds and transferred management of one of the Jayhawk Investment Funds to Primarius in exchange for fee-sharing arrangements with Primarius." (Compl. ¶ 10.)

The business relationship eventually soured, and Jayhawk and Primarius became involved in a lawsuit in federal court in California. Those proceedings have been stayed pending arbitration between the parties. Shortly after the California court entered an order for arbitration, an attorney for Primarius issued a press release that Plaintiffs allege to be defamatory. The press release suggested that Jayhawk had acted unethically and in violation of securities laws and asserted that "[t]he time has come for ethical fund managers to take a stand against the improper practices of these few bad apples." (Compl. ¶ 17.)

In addition to the offending press release, Plaintiffs' complaint describes an instant message conversation between Lin and one of Plaintiffs' business associates in which Lin discussed the California litigation and "then implied McCarthy was dishonest and likened him to a cheating spouse." (Compl. ¶ 20.) Plaintiffs also offer a general accusation that Defendants "have purposefully interfered with existing business relationships between [Plaintiffs] and . . . potential or existing investors by making false, misleading, and defamatory statements regarding the California litigation and [Plaintiffs'] business practices." (Compl. ¶ 21.)

Before filing this lawsuit, Plaintiffs sought relief twice in Kansas state court. Their first complaint was dismissed for lack of personal jurisdiction; the second was voluntarily dismissed. Plaintiffs then filed a substantially similar complaint in this court, alleging defamation and tortious interference with contract and with potential business relationships.

Primarius, a Delaware corporation with its principal place of business in California, and Lin, a California resident, contend that they do not have sufficient contacts with Kansas to be subject to this court's personal jurisdiction. Thus, they seek dismissal of the complaint.

Jayhawk, a Delaware corporation with its principal place of business in Mission, Kansas, and McCarthy, who moved from Kansas to Nevada in 2003, maintain that this court may properly exercise personal jurisdiction over Defendants based on the following contacts with Kansas: a four-year business relationship with Jayhawk, headquartered in Kansas; telephone and email communications with representatives from Jayhawk, at times on a weekly basis; transmission of business-related documents to Kansas; the wiring of money to Kansas bank accounts, sometimes as often as quarterly; a visit by Lin to Jayhawk's Kansas office to meet with investors; and a guest-speaking appearance by Lin at a University of Kansas business course.

**MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)**

Although plaintiff bears the burden of establishing personal jurisdiction over defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light," *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id.* The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *Id*. Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* Only the well pled facts of plaintiff's complaint, however, as distinguished from mere conclusory allegations, must be accepted as true. *Id.*

## DISCUSSION

### I.   Personal Jurisdiction

To obtain personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process." *Intercon*, 205 F.3d at 1247. Because Kansas's long-arm statute permits the exercise

of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Kansas law collapses into the single due process inquiry that includes both a requirement of minimum contacts and an analysis of fair play and substantial justice. *See OMI Holdings*, 149 F.3d at 1090.

### A.   Minimum Contacts

The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant so long as the defendant purposefully established "minimum contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *accord Intercon*, 205 F.3d at 1247 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). In the context of tort claims, "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995). Instead, to exercise specific jurisdiction[1] over a

---

[1] A court may exercise general jurisdiction if the defendant's contacts with the forum state, while unrelated to the alleged activities upon which the claims are based, are nonetheless "continuous and systematic." *Intercon*, 205 F.3d at 1247 ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."); *accord Doering*, 259 F.3d at 1210. Plaintiffs are not alleging that Defendants are subject to the general jurisdiction of this court, and so the analysis will focus only on the requirements for specific jurisdiction.

defendant, the court must conduct a particularized inquiry into whether the defendant has "purposefully directed his activities at residents of the forum, and [whether] the litigation results from alleged injuries that arise out of or relate to those activities." *Intercon*, 205 F.3d at 1247 (quoting *Burger King Corp.*, 471 U.S. at 472); *accord Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001).

The purposeful direction requirement is designed to protect an out-of-state defendant from being brought into court for merely "random, fortuitous, or attenuated contacts" with the forum state. *Burger King*, 471 U.S. at 475. In the context of tort claims, purposeful direction may exist when defendant engaged in "(a) an intentional action . . . (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (interpreting *Calder v. Jones*, 465 U.S. 783 (1984)).

Plaintiffs' complaint alleges that Defendants issued a nationally-distributed press release containing false, misleading, and defamatory statements. Plaintiffs also assert that Lin made false and misleading statements in a conversation with a business associate of Plaintiffs. These allegations, accepted as true at this stage in the litigation, *Intercon*, 205 F.3d at 1247, are sufficient to satisfy the first requirement of an intentional act by defendants.

The second step in the purposeful direction analysis requires that the alleged tortious conduct be "expressly aimed at the forum state." *Dudnikov*, 514 F.3d at

1072. Although this notion overlaps with the third element—that Defendants knew harm would be suffered in the forum state—"the overlap is far from complete." *Id.* at 1074-75. This second step of the analysis focuses on "a defendant's intentions–where was the 'focal point' of its purposive efforts." *Id.* at 1075; *see also Far West*, 46 F.3d at 1080.

Some courts adopt a broad interpretation of this element, finding it satisfied where the defendant "individually target[s] a known forum resident." *Bancroft & Masters, Inc. v. August Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The Tenth Circuit, however, has taken a more restrictive approach, "holding that the forum state itself must be the 'focal point of the tort.'" *Dudnikov*, 514 F.3d at 1075 n.9 (quoting *Far West*, 46 F.3d at 1080).

The *Dudnikov* opinion did not further elaborate this element–its facts did not require additional discussion. But the Third Circuit opinion in *Remick v. Manfredy*, cited with approval by *Dudnikov*, and the Supreme Court's decision in *Calder* provide supplemental guidance on how to analyze whether Defendants' allegedly tortious conduct targeted Kansas.

In *Remick*, the defendants faxed an allegedly defamatory letter to an office in the forum state. *Remick v. Manfredy*, 238 F.3d 248, 257 (3d Cir. 2001). Two employees in the office found the letter on the fax machine and read it. *Id.* at 259. Those facts alone, the court concluded, were insufficient to establish that the tortious conduct targeted the forum state. *Id.* Additionally, the defamatory letter and the

charges in the letter were published throughout the boxing community, in which plaintiff worked as a sports and entertainment lawyer, and not just in the forum state. *Id.* Tthe forum state did not have any kind of unique relationship with the boxing community; persons in the boxing community were located across the nation. *Id.* Thus, the Third Circuit concluded that defendants' actions did not target the forum state. *Id.*

In *Calder*, on the other hand, an allegedly libelous story published in the *National Enquirer* was expressly aimed at California when it concerned a California resident and was drawn primarily from California sources. *Calder*, 465 U.S. at 788-89. The *Calder* Court also noted that California had the highest level of *Enquirer* sales of any state, almost twice as many as the next-highest state. *Id.* at 785. Additionally, the article impugned an entertainer whose career was centered in California by suggesting that she could not fulfill professional obligations. *Id.* at 788. These facts were sufficient for the Court to conclude that California was the focal point of the story. *Id.* at 789.

Both *Remick* and *Calder* found significant the effect of the allegedly tortious statements on a plaintiff's business associates in the forum state. *Calder* suggested that any impact on the plaintiff's entertainment career would be largely caused by the article's distribution in California. In contrast, *Remick* noted that the professional boxing community, who would be most likely to alter business relationships with the plaintiff, existed throughout the country, and so publication of a defamatory letter in

8

the forum state alone would not reach a significant audience of potential business associates.

Here, Plaintiffs assert that the press release in question appeared in an article in the *Kansas City Star*. Defendants, however, offer an affidavit from the attorney who issued the press release, contending that it was "provided to a publicist in Los Angeles, California, who subsequently placed it on businesswire.com, an international media relations and press release distribution wire service that does not focus on any particular location." (Defs.' Mem. in Supp., Ex. 1 ¶ 10.) Defendants also point out that, unlike *Calder*, they relied on no Kansas sources for the information in the press release. Additionally, Defendants stress that neither party to the allegedly offending instant message conversation was connected to Kansas.

Beyond merely the participants in or targets of the allegedly tortious statements, however, the locations of Jayhawk's clients, investors, or other business associates are relevant. As in *Remick* and *Calder*, the court is particularly concerned with current or potential business relationships in Kansas that may be negatively affected by Defendants' statements.

On that point, Plaintiffs' complaint asserts that as a result of Defendants' misleading statements, Jayhawk received phone calls from concerned investors, "including multiple investors located in Kansas." (Compl. ¶ 24.) Plaintiffs specifically identify Kornitzer Capital Management, Inc., an investment firm located in Kansas, as one business associate who called with concerns. Plaintiffs also

9

maintain that they have suffered harm to their "reputation in the Kansas business community," (Compl. ¶ 33.), and a representative of Jayhawk asserts in an affidavit that "[d]ozens of Jayhawk's clients are residents of Kansas." (Pls.'s Mem. in Opp'n, Ex. B ¶ 2.)

Plaintiffs rely on these same facts to satisfy the third element of the purposeful direction analysis, "knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov*, 514 F.3d at 1072. This inquiry "concentrates on the consequences of the defendant's actions–where was the alleged harm actually felt by plaintiff." *Id.* at 1075. Plaintiffs reiterate that Jayhawk suffered harm to its reputation and business practices, which occur in Kansas, and that the financial harm Jayhawk suffered was also felt in Kansas.

With this factual and legal background, *Dudnikov*'s caution about overlap between the second and third elements of the test—whether the actions were targeted at the forum state and whether the brunt of the injury was felt in the forum state—becomes clearer. It is not enough that injury in the forum state is foreseeable merely because a plaintiff lives there and has some relationships there. *Dudnikov*, 514 F.3d at 1077. Instead plaintiffs must establish "not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook *intentional actions that were expressly aimed at that forum state*." *Id.* This distinction is illustrated in *Remick*—assuming the defendants meant to defame the plaintiff within the boxing community, their actions were not focused

10

on the forum state because it had no particular concentration of boxing professionals. And in *Calder*, assuming that the *National Enquirer* article was intended to harm plaintiff's professional career, the article was targeted at California, where a vast majority of the entertainment industry is based.

In this action, then, it is not enough for Plaintiffs to establish that they have some clients and business associates in Kansas, or even that some of their Kansas relationships were affected by the allegedly defamatory statements. Instead, Plaintiffs must show that, assuming Defendants wished to harm Plaintiffs' business practice and reputation, they would target Kansas with their statement. The court must determine whether in this case, like in *Calder*, the focal point of the intended audience was in the forum state, or whether, like in *Remick*, the forum state has no particular concentration of the relevant business community members for whom the statements would have meaning.

Taking into consideration the factual record, the most that can be said is that *some* of Jayhawk's business contacts are in Kansas. It is unclear, however, how many or what percent. And certainly no party in the case is suggesting that Kansas is the hub of financial management and investment professionals. Instead, this case seems more analogous to *Remick* where some business associates were indeed in the forum state, but the record lacked any evidence that the relevant community was concentrated in that state. Thus, Plaintiffs cannot satisfy the "purposeful direction" analysis required in the context of tort claims.

11

### B.     Plaintiffs' Argument

Plaintiffs' overarching theme in attempting to meet personal jurisdiction requirements is that Defendants had an on-going business relationship with a company in Kansas, that Defendants committed tortious acts arising out of that relationship, and that the effects of those acts were felt in Kansas. (Pls.' Mem. in Opp'n 16.) These allegations are insufficient to support the minimum contacts requirement in this case. *See, e.g.*, *Far West*, 46 F.3d at 1080. In evaluating personal jurisdiction for tort claims, this court is bound to the *Calder* test, which specifically requires that the tortious actions be targeted at the forum state. *Calder*, 465 U.S. at 789; *Dudnikov*, 514 F.3d at 1074.

## II.    Conclusion

In light of the above analysis, discussion of the remaining steps in the personal jurisdiction paradigm—whether the cause of action arises out of contacts with the forum state, whether jurisdiction would be consistent with fair play and substantial justice, and whether Defendants' fiduciary shield argument would preclude jurisdiction over Lin—is unnecessary. So too is Defendants' motion to strike the declaration Plaintiffs attached to their opposition to the motion to dismiss; even considering the information in that declaration, Plaintiffs cannot set out a solid basis for personal jurisdiction.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' motion to strike (Doc. 14) is denied as moot.  Defendants' motion to dismiss (Doc. 5) is granted.  This action is dismissed for lack of personal jurisdiction.

**IT IS SO ORDERED** this 18th  day of September, 2008.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge